The Honorable, the Judges of the United States Court of Appeals for the 4th Circuit. Oyez, oyez, oyez, all persons have the right to remain silent at this time of business before the Honorable. The United States Court of Appeals for the 4th Circuit are admonished to stand by and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. All right, be seated please. This afternoon we're in re Express Scripts, Inc., and we'll hear from Mr. Michael. Thank you, Your Honor, and may it please the Court. Chris Michel for the Petitioners. Excuse me, I called you Michael. It's Michel. It's been happening for a long time. No problem, Your Honor. No, no. I suspect you're not the first. You are definitely not the first. First, Michel, on behalf of the Petitioners. The district court in West Virginia is speeding toward a statewide bench trial this August that has no precedent in Federal law and that deprives Petitioners of multiple core rights. This Court should grant the mandamus petition for three reasons. First, the Seventh Amendment entitles Petitioners to a jury trial because plaintiffs seek monetary compensation that has no foundation in his. Are we talking about the same case? I thought this case was now narrowed down to the public nuisance case. It is, Judge Niemeyer, but what they are still seeking for the public nuisance is monetary compensation. In this case? In this case. What they call monetary abatement. If you look at paragraphs 911 and 912 of the complaint, which are not affected by the recent dismissal. Well, abatement isn't done free, and it seems to me that if you abate a nuisance, you're going to have to spend some money. But that isn't monetary damages, is it? I think. If I order you to cut down a tree, it's going to cost you money to take it down, but it's an injunction. I think that's right, but what the plaintiffs are asking for here, and I think this is a critical distinction, is not that. They're not asking us to abate the nuisance using our own money. They're asking us to pay them money that they will then use for their own purposes. That's just a matter of relief, how the court sets it up at the end. In other words, if they are entitled to do it under the law of equity, then that will be governed by whatever authorities. But it seems to me they make a pretty good case that public nuisance abatement as distinct from private nuisance, a public nuisance abatement was something that was committed to the Chancellor. But am I wrong on that? Well, with respect, I do think you're wrong for a couple of reasons, Judge Niemeyer. I think the one that matters the most, and we can talk about the historical antecedents, but I think what matters the most is if you look at paragraph 912 of the complaint, the plaintiffs are asking to, quote, compensate them for the funds they have expended and continue to expend for the increased costs of various public services. That is a prototypical request for compensatory monetary relief, very different from an injunction directing the defendants to do something. Of course, directing the defendants to pay money is just another way of saying compensatory damages. And the Supreme Court has made clear that that kind of labeling. That's in paragraph 8. 912. 912 of the complaint. Well, so that is a question I have, which is I am extraordinarily confused about the legal effect of this stipulation and dismissal order because I'm not going to hide the ball. I genuinely have no idea what aspects of the complaint are still alive and what parts are not. There's language in the complaint that's great for you that you quote relentlessly in your brief, and I actually don't know if those parts of the complaint are still operative or not after the district court threw out all the legal claims.  So how am I supposed to figure that out? Let me try to address it as directly as I can. So what I was just quoting to Judge Niemeyer, paragraph 912 of the complaint. Just tell me briefly where I'm going to find that. Is that at the do we have an appendix or is that in your motion or where was that? So it said I don't think we submitted the whole complaint. It's 346 pages, but it is available on the district court docket. It's at docket 128. I know, but what do I have? I don't think we have the complaint in this court. We'd be happy to submit that after argument if that's helpful for Your Honor. Well, you know, this is a very unusual proceeding. It's an interlocutory proceeding. It's interrupting the ongoing trial. And when we decided to look at this, the case involved law claims and equitable claims. Now, we have been told since we set this up that all the law claims have been dismissed so that only the equitable claim is in place. Now, if there's some nuances in the complaint, we don't have the pleadings. I have to spell them out. But when you make a representation that that is still in the complaint, is that in the request for relief? It is in the pleading of public news agencies. I didn't ask for pleading. I asked if it was in the request for relief.  Yes. It's in the request for relief. And on that, I would direct you to the supplemental appendix, which has the stipulation in it, and it says that the plaintiffs are dismissing everything except for their request for an injunction. Can I take a step back and sort of understand a little bit of the framework here? I understand that Judge Niemeyer refers to what is left as being equitable, and West Virginia refers to that as equitable, and our court in Huntington referred to that as equitable, and that may well be equitable in 2026. But that seems to me a fundamentally different question than asking whether it was equitable and not subject to the Seventh Amendment right in 1791. And so what they call it today doesn't matter. The real question, it seems like to me, is not what name it's given, but whether it would have been tried in law or in equity in 1791. And I take your position to be that the way Huntington has defined equitable, equitable abatement, and the way the complaint has plaid equitable abatement, it goes well beyond what equitable abatement meant in 1791, and it encompasses absolutely legal claims, which are compensatory. That the court was very clear that in Huntington that that's what West Virginia has adopted. And so when they use the term abatement, it is both a seeking equitable and legal relief, and therefore, you're entitled to a jury trial. Yes, I agree with all of that, Judge Richardson. And just to take another step back, you know, I do want to underscore, we're the defendants in this case. The district court entered an order that there would be a bench trial, even though the plaintiffs were concededly seeking legal relief at that time. We filed this mandamus petition. No. But that's all gone. Like, the question we've got, we've got a simple question, which is they brought a public nuisance action for abatement. And the fundamental question, we can break it up into lots of pieces, is under West Virginia, the plaintiffs have sought abatement. Is that purely equitable in the view of 1791? And that question sort of seems to be divorced from what we might call it today when we're seeking downstream compensatory damages, that that is a legal claim. And West Virginia can call that abatement. The plaintiffs can call it abatement. But for Seventh Amendment purposes, it is a legal claim. That is exactly right. That is our position. It's a question.  Can I come back to the question that I asked you that I did not get an answer to? How do I know what is currently live? So — I was asking, what's in the complaint right now? No, no. Not what's in the — yeah. What's in the complaint? I'm asking, in light of this stipulation, what parts of the complaint are — whether or not that — I'm not even saying that I think the answer to that question is controlling here. But I would actually like to know the answer to how do I know whether, for example, this language that you cite in the complaint where they say they're seeking compensation, I have no idea if that's still part of the complaint right now. Let me give you the most direct answer. Obviously, I'm interested in what my friend, the master of the complaint — It's just a little strange that you've entered into a stipulation in which we don't seem to agree on what we stipulated to. I actually am not sure there's a disagreement on what we stipulated to. There's a serious disagreement about whether it's legal or equitable for the Seventh Amendment. But here, let me try my most direct answer, which is that everybody agrees that after the stipulation, they still have a claim for public nuisance. That — let's posit that that is deeply unhelpful to me.  My next — maybe I'm trending in the right direction. Is the word — that compensation paragraph that you cite over and over in your brief, is that still part of the complaint or not? So my next sentence was going to be that is under the heading of their claim for public nuisance. So I think the only way to understand the complaint — Yeah, but when they ask for damages, originally, they would include that because damages emanated from a lot of different sources. But the question is — I want to explore the question raised by Judge Richardson, but my initial question was what do we have before us, because since we granted — my whole thesis was since we granted this hearing, the case has changed, and we don't know how it's changed. In other words, I was trying to find out what's left. I was going to ask you several questions about what's left before we assess what we have before us.  And so what we have before us, for instance, I don't know whether it was with prejudice or without prejudice. With prejudice. It was with prejudice. Yes. Counsel, you agree that that, too, is with prejudice? Yes. All right. So that was one question. And so what we have before us is a claim that is denominated public nuisance abatement. Now the question is what aspects of the complaint were deleted in response to that? So let me — I mean, again, I don't want to point any fingers, but the plaintiffs are the ones who amended the complaint or dismissed the complaint after we filed the mandamus petition in this case. I understand, you know, the thrust of the question. Here's what I would look at. Supplemental Appendix 5. This is the supplemental appendix or addendum that the Court granted leave for the plaintiffs to file. This contains the stipulation, and here's the key sentence. It says, A claim of common law, public nuisance, insofar as it seeks an injunction and or the abatement of the alleged public nuisance. That, I think, is the best statement. So there's no debate here that at least what is left is a claim for public nuisance and abatement. Correct. No dispute about that. And there's no dispute that abatement means what the Fourth Circuit said in Huntington. That is correct. As the Fourth Circuit's prediction of West Virginia law is correct. As a panel, we are bound by that. Correct. Correct. And so based on that, if we are to conclude that Huntington's definition of abatement includes both legal and equitable aspects, your argument is you're entitled to a Seventh Circuit ruling on whether the complaint includes the word compensation or not. Yes, that is correct. I do want to try to address Judge Hyten's. And, of course, my friend may have a different view, but I kind of think he won't. They pled a public nuisance claim. In the part of the complaint where they described their public nuisance claim, they used the language that I quoted to you from paragraph 912. They haven't dismissed their public nuisance claim. I'm not sure what the theory would be that it's no longer in the case. So I think that's still operative. I forget. We have a lot of disagreements, but I actually don't think we fundamentally disagree that the key question in this case, as Judge Richardson has gotten to, is, is monetary abatement. I thought Huntington was predictive. Huntington predicted that West Virginia would not limit abatement to include purely declaratory or injunctive relief, but it did not address whether such non-injunctive relief would, as a matter of Federal law, fall under the ambit of the Seventh Amendment. That is correct. All right. So why — why wouldn't we have to, in order to find that out, examine — this jumps the question that I wanted, because I'm still interested in knowing what's before us, but that jumps the question of what — how the Court's treated, at the time of the Seventh Amendment, how the Court's treated public nuisance where you're seeking public nuisance abatement. Right. Let me try to go as directly as I can. So I think what's before you, if there's confusion about other stuff, it's — there's no doubt that what's before you is a public nuisance claim seeking abatement defined as payment of money. Why are you defining it? That's how the plaintiffs define it. That's what they're asking for. They're — Not just the plaintiffs. Like, the Court in Huntington is binding on us. That is — West Virginia's understanding of abatement has been resolved by Huntington. Yes. It might be right. It might be wrong.  But it is binding on this panel. That —  What Judge Meemeyer suggests, the eerie guess that they're made is a binding panel decision that means, for our purposes, West Virginia abatement includes traditional abatement and it includes something that they call abatement that is legal in nature. I agree with that. I think my friends obviously are going to disagree with the last part of it, but I think everybody can agree that the Huntington case includes monetary abatement, that under West Virginia law, a possible remedy. We disagree with this, but we're bound by it in this Court. So the holding is — Okay. So I'm looking at page 575 of Huntington, and it says, In view of these circumstances, we hold — and the second holding is, in hold — the district court erred. Sorry, because Huntington reversed the district court. It says, We hold the district court erred to, in holding that the local government's abatement is barred per se as a request for monetary damages.  Right. You agree the Huntington panel did not decide exactly what you can get as abatement under West Virginia law. They just said that you cannot — the Huntington panel holds is that you cannot say per se what the plaintiff sought there was not permitted under West Virginia law. I think that's right. Okay. Yes. And the Huntington — They go beyond that, right? We further conclude, right, which is no different than a holding. We further conclude that it permits abatement of public nuisance to include that a requirement of the defendant paid money to fund efforts to eliminate the resulting harm to the public. Like, that language is not in the previous quote, but that is a definition of abatement that goes well beyond what equitable abatement was in 1791. I completely agree with that. I think what matters here is — are two things. One, they are seeking monetary abatement defined by them as compensation, and Huntington — no matter how you read Huntington, it at least doesn't foreclose that relief. There may be a dispute about — Wait. Where does Huntington say you can get money damages as compensation? Where does it say that? I agree it says you can get money. Where does it say you can get money as compensation? Well, I suppose that's where there may be some daylight, but there's no doubt that's what they're seeking. I thought your answer to that question would be when it says from the resulting harm, like, once we're downstream from the nuisance itself, we're now not talking about removing the nuisance. We're talking about the resulting harm. And so that's like an individual, the road's blocked and they have watermelons that rot because they can't get them to market. The resulting harm is, like, that plaintiff can recover, but you can't recover that in abatement at the common law. I agree with that. I mean, I don't — I've been trying to get to the Seventh Amendment question. You know, but I think that the critical point is that at common law, what you could get for public nuisance were two things. One, there could be a common law, a law proceeding under an indictment, or two, in certain narrow cases, there could be an injunction, an injunction that compels the defendant to do something. There is absolutely zero evidence that you could get any kind of money, that you could get a payment from the defendant to the plaintiff at common law. And this — the Supreme Court and this Court have said that when you look at the Seventh Amendment, you generally presume that monetary relief is legal. There are some narrow exceptions to that where monetary relief can be equitable. Have we ever said those are narrow exceptions? I agree we've said — I agree we in the Supreme Court have said that money is generally. I'm not sure we've ever said narrow exceptions. I think they are. I think they are narrow exceptions. Sure. And there are exceptions like disgorgement or the return of specific property that the defendant is wrongfully holding from the plaintiff. So can I ask you about something you say in your reply brief that sort of struck me? Sure. You, quote, tell for the proposition that the Seventh Amendment, quote, requires trial by jury in actions unheard of at common law. I have always understood that sentence to make a limited statement, which is just because this isn't something that was known at common law doesn't mean the Seventh Amendment doesn't apply. Isn't the Seventh Amendment a plot? Like the SEC action in jarczy was sort of unknown at common law. So just because it was unknown at common law doesn't mean you don't have a Seventh Amendment jury trial. But you seem in your reply brief to be citing that for an even stronger proposition that unless an action was known at common law, you have a Seventh Amendment jury trial right. Is that your position? I don't think we have to go that far. I don't think you have to read it that way.  Okay. Thank you. Fair enough. You know, our — if that's an overstatement, fair enough. You know, our — our much more limited submission is that under the two-step task that the Supreme Court has outlined under the Seventh Amendment, you look at whether this type of action was historically available. And more importantly, you look at whether this type of — Well, that was a little confusing to me, too, because let's talk about a different sentence in Tull, where you say at step one — now, I think you might have a great argument at step two, but I'm trying to get your answer at step one. At step one, you say that plaintiffs seduce no authority that you could get an action like this at common law. And then here's a quote from Tull, which I'm sure you're familiar with, even though your briefs assiduously avoid it. A public nuisance action is a classic example of the kind of suit that relied on injunctive relief provided in courts in equity. The plaintiffs rely very heavily on that statement, and you conspicuously avoid it in your briefs. So would you please tell me why that's not really bad for you at step one? Yes. It's not really bad for — well, it's not really bad for us at step one for two reasons. First, Tull also says that the essential function of a public nuisance was to provide a civil remedy for an action at law, a criminal action. So I think Tull, read in its totality, more strongly supports the — You just made a really strong claim, adduce no authority, and then you ignore a sentence by the Supreme Court that seems to directly address this question. So I think, though, the most important takeaway from that sentence is that it's talking about injunctions. It's not talking — it's not talking about monetary abatement of the kind that the plaintiffs are seeking here. So even if that statement is read for all that it's worth at step one, that still leaves the tremendous question at step two of what the remedy that they're seeking in this case is. And that's where I go back to cases like — Well, can I go back, actually? So you and Judge Richardson seem to be saying different things. You keep saying the remedy they're seeking in this case, and Judge Richardson has asked of you about questions about the type. What is your position on that question? Is it the remedy they're seeking in this case, or is it the category of remedy that they're seeking that you think is the right question? Maybe I don't see the distinction, but I think that the remedy they're seeking in this case is what governs whether they get a jury trial or — So take this hypothetical to maybe get at Judge Heiden's question, which I take as a question maybe of me rather than you. But so imagine the hypothetical where a plaintiff brings a public nuisance action like the one we have here, and they waive abatement as a remedy. And so they say, we are not seeking abatement. We waive it. We forever go, and it's with prejudice and all the things that go along with it. But we do seek an injunction. Yeah. And the injunction we seek is that you stop the oversupply of narcotics. In that instance, do you believe that you have a right to a Seventh Amendment jury trial? I think that's a closer question. I think that's a good argument. We probably would not. And so except for a minute that hypothetically you would not have a claim in that scenario, and I get maybe that's hard in its own right. The point being there is that there the plaintiff chose a remedy that is exclusively equitable in nature, that is, an injunction to remove the oversupply or the nuisance itself. In contrast, what we have is we know they're seeking an abatement, and the abatement includes, per Huntington, both equitable and legal results or remedies. I agree. And you know that from the briefing in this case. Again, I think the plaintiffs and I actually don't disagree on this. We said they could renounce their request for monetary relief. They have doubled down on their request for monetary relief, and that's fine. That's their prerogative. Just shorthand it. You said they could renounce. And you said they could renounce. And if they renounce, then what did you say? Then I think we would be in the world of can we get a jury trial and just an injunction on that? Well, I'm not in court based this delineation on what's alleged in the complaint. And it seems to me West Virginia would, too. And so a lot depends on what the complaint says. Abatement can be basically injunctive relief, that type of thing. And so I think it's enormously important for us to have a complaint before us that clearly articulates what the plaintiff's claim is and what their claim for relief is, and not just have a different order that we have to apply to the complaint. I agree with everything you said, Judge Niemeyer. You could say that. And what if we asked the parties to agree to have the plaintiffs file an amended complaint, laying out what they want, and then assess that complaint against the standards of Tall and Huntington and all the rest? I don't have any objection to that. I think it's possible, they'll say, we stand, that we act, there's common ground. Well, if they do, then they may invite a jury trial then, because it depends on the remedy.  That's absolutely correct. That's why we're here. Well, I know, but we're here conditionally or amorphously in some murky 340-page complaint. I don't envy your position, and I respect the twists and turns this Court has taken mostly at the urging of my friends on the other side, but I actually don't think there's a real dispute we'll hear from my friend whether they stand by paragraph 912 of the complaint. So I actually was asking this question of you. I'm just trying to make sure I understand what your position is. Yeah. My position is your position that whether or not this is legal or equitable turns on, A, the specifics of what the plaintiffs are seeking in this case, or, B, what would be authorized as a form of relief under the cause of action the plaintiffs are asserting? I think it's A. I think it's what they're seeking in this case. Now, I suppose you would have a conflict if they were seeking something that was not authorized under West Virginia law, but that would be a different case than the one we have here. That would be our respectful objection to the panels holding in the Huntington case, but that's not the question that's before you today. I think that does make this an easier case. So under A, you might imagine there are, like, subparts, like little i and little 2i, and one possibility is to say that we look at what the remedy they seek, abatement, and what is encompassed within that as a categorical matter. And then there's a second answer which says, well, maybe we can break abatement apart into its constituent parts and say, under West Virginia law, as Huntington explains, there's some legal and some equitable, and they can choose among the parts of abatement. Are you taking the former, not the latter? I think this goes back to my answer to Judge Niemeyer. If they, I think, hopefully to cut to the core of it, if they filed a complaint seeking abatement, our position would not be that as an absolute iron rule that we get a jury trial. It would matter. I'm sorry, Your Honor. Darryl Queen tells us to do just this, is to look at the relief of the complaint.  Totally. I fully agree with you, Judge Niemeyer. And that's why, to Judge Richardson's point, you know, whatever the Romanettes that we're on where they say we're seeking monetary relief, monetary compensation, that's where critically we're outside of the world of abatement just to have the defendant remove the tree from the road. We're in a very different world of defendant pay money out of its general coffers to the plaintiff for it to use for its own purposes. That is monetary relief, compensatory damages, if not directly a name, at least much more akin to that remedy at law than to any kind of equitable remedy that has ever been recommended. We'll get you back on some rebounds. Thank you, Your Honor. All right. Mr. Magistro. Thank you, Judge Niemeyer, and it may please the Court. I think it makes sense for me. I had an introduction, but I'm going to dive right into the question of what's left. I think that's bothering you, and I think there's a very simple answer. It is bothering me, and we're having these various questions which go to different angles on that. I don't think the law is that unclear. I mean, we're trying to divide law from equity, and there are some standards. I think we're supposed to look at the complaint. I think that's what Dairy Queen tells us to do, is to look at the complaint and see what the relief requested is. And my question is, we have a generalized order dismissing complaints with prejudice but keeping in public nuisance. But Huntington says a public nuisance claim can include damages claims. And so if you have a damages claim, then traditionally we would have a jury resolve that. So it seems to me my ‑‑ I come back. I don't speak for the panel, but I come back to the notion that maybe we should receive from counsel an amended complaint that you adopt and that you're pursuing in this case, and then we determine the petition on that basis. I don't know. You can offer anything that you suggest, but you see the dilemma. I understand your dilemma, and let me start with, Judge, well, you're right. You look at the complaint. But you look at the complaint minus what's been dismissed. I return to I have no idea what's been dismissed. And that's where I'm going next. Is your public nuisance claim, as you alleged in the complaint, is it still in the complaint? Yes, of course. That's the only claim left in the complaint. But the remedy, Judge Bailey's order is clear about what remedies remain. He read, but he stopped at an interesting part. After the abatement of the alleged public nuisance, there's a parenthetical that says all other requested remedies, including compensatory and or punitive damages, are voluntarily dismissed.  Can I maybe put this way? And let me say that I'm also open to Judge Niemeyers. Maybe what we just need is an amended filing. I would like you to try to do something for me. Sure. Without saying the word abatement, tell me what you want the district court to order the defendants to do. Remedy the result. No, no, no. That's the end you want to accomplish. What is it that you want them to do? The order of abatement. What are you going to have them tell? So the order of abatement would be that the court would supervise the remedy of I'm trying to come up with a word other than abatement because it works so well. You're trying very hard not to say the words force them to pay money. So the court doesn't have to force them to pay money. The court can ask them to do it. That is what Judge Polsker said. Well, it's not a matter of the court. It depends on the complaint. That's so important. And the court interpreted the dismissal the way you just read and entered an order of dismissal. But it's too generalized, I believe, in view of the arguments being made here. Now, if you're ordering money to be paid for damages to people, that's one thing. If you're ordering that there be no more distribution of drugs, or they be eliminated or whatever remedy you're seeking, and it sounds more injunctive, then obviously that can be handled on the equity side. But it's very important to understand what you're seeking in the complaint because I think the dictating factor is not what the court said. The dictating factor is what you're claiming. So I would analogize this case to abatement of a pollution spill. Don't analogize. Take the one we have now. Okay. The one we have now is. You answered the question, or Judge Hyten's question. I'd love to get an answer to it because you said they could order them to do it. Yeah. What Judge Hyten has asked is, what is it? It is. What are you ordering that they. . . So the abatement plans are, if you look at the abatement plan in Huntington, for example, it would be something like the abatement plan in Huntington, where I disagree. It would be to eliminate the resulting harm. Exactly. So that's people that got addicted and, therefore, were sick or died. It would be to eliminate people in the future getting addicted. It would be the resulting harms of the opioid epidemic. Right, because a nuisance is a claim. Get more particular. How would you do that? You have 10 people addicted in a particular town. How do you abate the nuisance? So you have treatment. You have the government fund treatment. You have the government fund education. Well, that sounds like damages. It's not. . . Because the abatement, it gets rid of the nuisance. And if the nuisance is already stopped, it doesn't need to be abated. But if the nuisance is being abated by redressing the injury, in this case addiction, education, requiring classes, that's not getting rid of the nuisance. That's redressing it with damage. My response to that, Your Honor, is it's no different than the pollution case. We're not just telling them to stop the pollution. We're making them clean up the mess. And that is. . . No, no, no, no. Actually, you're not at all. You may try to do that, too. But, like, none of the things you've mentioned so far do that at all. What you're instead doing is saying we want money to treat the people who got sick as a result of the pollution. That's what you're asking for. We want money to treat the people that got sick from the water, the groundwater. And that is distinctly not equitable abatement. Right? That is precisely a legal remedy that would be available to that individual because they're sick. We don't believe there is. . . Can I answer that? I would like to answer that question. The analogy to pollution is to get rid of the pollution. The analogy here would be to get rid of the drugs, to preclude the distribution of drugs so they're not available. That's the nuisance that was created. The injury resulting from that nuisance was addiction in this one example. And you're saying in order to redress the addiction, they would need treatment, which would be funding their remedy. Right? Yes. That is what's necessary. Why wouldn't that be a damage claim? Because it is a forward-looking remedy to alleviate the effects of the nuisance. So if I get in a car wreck and as a result I break my legs, part of the damages that I get is for occupational therapy, right? It's perspective, right? Like I need to pay for people to teach me to walk again. The fact that it's perspective doesn't render it equitable, right? Any more than the money to get somebody who is sick from pollution, for them to get treatment so that they don't die is forward-looking, but it's damages. The difference is who is asking for it. In the case of an abatement action, it's the government seeking to remedy harms to people.  But those harms have impacts on they harm the public. And that is why abatement is different than. There's no doubt that's what you're seeking. You're seeking the money to, in your pollution example, the money to provide treatment to the individual who got sick as a result of the pollution. Yes. That's not abating the nuisance. The nuisance was the drugs, right? So, Your Honor, what I would say is. Could you answer the question? Yes. The nuisance is the nuisance. There's two parts to that. The nuisance was the acts of the drugs and the nuisance was the resulting condition. If you look at the. . . That's not. . . That's the result of the nuisance. If you look at the second statement. . . The nuisance itself was the presence of drugs, the overdistribution and all, everything that went. . . I don't agree that that's all the nuisance was. Because a nuisance is an act or condition under the second recidivism test as adopted by Huntington. So. . . And I would like to go to Huntington. But that is stopped, right? The nuisance is stopped. The act has stopped. The condition has not. Nuisances include conditions. What is the best case you would like for me to look at from the English common law in the, you know, 1790s, plus or minus some years, that says you not only get to remove the nuisance, which is traditional abatement, but you get to address, by money or otherwise, the resulting harms that are specific to individuals. I mean, I just want to know what it is that I'm supposed to look at. I've seen a ton of cases that say the opposite of that, but what I've never seen is one of those. So, I just want to know what you want me to go look at to identify this resulting harms as being part of a traditional equitable abatement. So, I think what I would look at is, and I don't remember the date of it, but Porter v. Warner Holding, where the Supreme Court said once equitable jurisdiction exists, the court may order whatever relief is necessary to enforce compliance. So, the answer is, you don't have any case that actually addressed the question we have, which is the resulting harm being part of an abatement remedy at common law. The answer is, there is no case, to your knowledge, other than Porter, which addresses a very different issue. Is there any case I should look at? I just want to know if I'm looking at something. I don't want to work on an opinion that turns out to be missing an important matter. Do you have any case that you want me to look at that suggests that the resulting harm, that remedying the resulting harm from a public nuisance is part of the remedy of abatement at the common law? It is part of the remedy of abatement in West Virginia, at least in federal courts now, but where is it part of that in the common law? So, I think we cite the cases. I looked at every one I could find on this question on pages 9, 12, 19 through 13 of our supplemental response. Okay. And I think those are the cases. If those cases don't say that, then we just don't have such a case. But I think it's not, I don't think there's a requirement that those cases say that. Because you can just expand abatement to be anything and still say that it meets the, like, old English common law form? I mean, I don't know, what was the basis for that? I'm not saying you can expand abatement. I think abatement, no, no, you're saying abatement includes something that was not included in abatement at the common law. That is, actions or money to redress resulting harms. And so, what I'm trying to figure out is, what's the basis for doing that other than your desire to do so? Because I have to compare it against something from around 1791. So, in 1791, you were allowed to have abatement. The question is, what does abatement, what is it? What did it mean there? What did it mean then? What does it mean there? And cleaning abatement, cleaning up the mess is abatement. The fact that it requires paying money doesn't mean it's not. There's a difference from cleaning up the pile of manure that was dumped on your property and the resulting harm to the flower bed. At that point, you now have to plant all new plants, buy them, and so forth. So, to remove the abatement is to remove the drugs, as I can see. Remove the distribution, which is the nuisance. The presence of the drugs. You want to take care of the addicts. What else do you want to do to remedy the abatement? To remedy the nuisance. To remedy the nuisance. So, there are several things. One is that you educate the doctors. So, you have prospective remedies to stop creating further. Educating the doctors is they would have to pay for the courses and the rooms and everything else for doing that? Yes. And what else? I'm trying to remember all of the elements. What about the example that Huntington gives to abate those who died from opioids? Is that part of the remedy that you see? I'm not sure where in Huntington you get that. I did the abatement plan in Huntington, and that was not something I asked for. I also don't see anything in Huntington that says that. To abate opioid-related addiction, crime, death, and disease. Sorry, Miles, aren't I good? In the local government's communities. I'm just reading it. To abate opioid-related addiction, crime, death, and disease. We did not seek the abatement of death or crime. That was why we argued that this was something that was constituted. That's in the definition of the condition that caused the nuisance. So I just found that language. It's on 573. Why isn't that naturally read as referring to to prevent future death, not to remedy past death? I think that's exactly what the Court's referring to. I didn't write that, and I'm not saying that. I don't have the context in front of me, but I know what we asked for. So can I ask you just a real practical question, though? Let's posit that I agree with you. I'm not saying I do, but let's posit that I agree with you that at least Dairy Queen suggests very strongly you have to go remedy by remedy as requested in the complaint. I'm just trying to think about what would happen if we deny the mendamus petition here, you go to trial, and then in an appeal after the final judgment, we conclude that notwithstanding all the representations you made today, at trial you sought things that we think crossed the line into legal relief, that you sought or the district court granted. It seems like that would be a structural error that would require throwing out the entire verdict, including if you lost it, right, even if you actually didn't even get the remedy, because the second you walked into — like, assume that it depends on what you're actually seeking. The second you walked into court seeking something that was legal, they had a Seventh Amendment jury trial right. The instant that was denied, there is structural error, and you have to throw out the entire proceeding. Does that seem like a good idea? Well, I think this is a good place to go where I wanted to go next, and that is we're here on a mendamus petition. Mendamus requires that the error be clear. I don't think Dairy Queen says that for jury — I think jury trial — I think Dairy Queen for jury trial denials creates a whole freestanding, you've got a right to mendamus if someone's threatened to deny your jury trial rights. Maybe for the very reason that Judge Hydens points out, that if you overstep your bounds at trial, or you might say already have, and it comes back up on appeal, then it gets thrown out. Well, that's the same as true in any other case where you're alleging constitutional error, and I don't read it. Well, that's not true at all. Virtually any other constitutional error can be harmless. Right. But a very small category of them cannot be harmless. I don't read Dairy Queen to overrule the mendamus precedent. And this Court — Tell us why, because I don't — Because it doesn't say that. It says you can remedy a jury trial error in mendamus. It doesn't say what you have to show to have mendamus.  Let's assume that you think that Dairy Queen has some ambiguity on that question. What about in re Lockheed Martin from this circuit, which just flat out says it? I think it's the same thing. Lockheed Martin doesn't say that you — It says you have a — It does not recite the traditional test for mendamus, does it? Nor does it say that they're not applicable. We contend that Cheney and the Supreme Court and the other mendamus cases still govern. You still have to meet the mendamus standard. Otherwise, I mean, I — I mean, you're going to be — But the mendamus can't be corrected. In other words, it's something that's incorrectible, and it's fundamental. It's constitutional. And it seems to me we treat that type of — if it's a structural error, it's without prejudice, regardless of what happens. And we — I think that — You're not challenging whether we can have mendamus on the denial of a jury trial, are you? No. But what I'm challenging is that you can have mendamus when it's not clear and indisputable. And I think our argument today shows that's definitely the case. Well, it depends what we're facing. And I must say I've been enlightened by our whole discussion here today because I think this is going to turn on the more particular nature of your lawsuit. Rather than having categories of causes of action discussed, I don't think that's useful. I think what's useful is what is the claim? It's nuisance. What is the remedy? You call it abatement, but it's not abatement of the — of the nuisance. The nuisance is gone. The drugs are not being distributed that way now. The pile of manure has been removed. What you're now doing is picking up the damages and the pieces and trying to help the town get its money back, get the doctors get trained, get the addicts trained and helped out, and all of which is remedial damages. Can I respond to that, Your Honor? Sure, of course. So — Yeah. So we're not trying to get money back. We're trying to do — Who's going to fund this? Who's going to conduct this? Are we going to pay you to do it? No. The — we're going to probably want to hire people to do it. And that is — And they're going to pay those people. Yes. But that is — and I think it's important you look — I mean, you look at what was at issue in Huntington. The argument you just made was the exact same argument the defendants made in Huntington. And that was the same — You're asking a different question. Huntington's asking what is West Virginia law. We're asking what was the law in 1791. Those are fundamentally different questions. And I agree with you. Now, but I was answering Judge Niemeyer's question, which is a different question from 1791. And — I take him to be talking about 1791, the nature of abatement. I — and I think the answer to that question is — well, I just want to make one more point about Huntington. Your lawsuit is going after their pocketbook. It's not asking them to change their conduct. It's going after their pocketbook. It's both. No. You're not enjoining them from anything. They've made an injunction. We are asking for injunctive relief. Asking for what? The complaint asks for injunctive relief. I know. What's the injunction look like? The injunction looks like the actions we contend that they performed that led to the — What action? The oversupply of opioids, the participation in the oversupply of opioids. They're not doing it. They stopped doing it. A lot of them are not even in the business. I mean, this is attacked so fully, none of these towns is suffering this nuisance now. The towns and cities are now suing to fix things up, to remedy what happened. There are — West Virginia has one of the highest O.D. rates in the United States. It's still going on. Sure. That's a serious problem. But that is, you're going to ask their pocketbook to fund treatment for those people. Treatment and other remedial acts to remedy the condition caused by the offense. And it sounds to me like that's just a stated, just a typical damage claim. And I think — Every damage looks at past conduct to remedy with the payment of money. So, past conduct, yes. Future effects of the past conduct, no. And I think it's important you go back and look at Huntington and look in the footnotes where they cite the federal equity cases that say that the payment of money does not mean it's not equity. I understand that. But, you know, you say the future effect. They would not be responsible for somebody who, at this point, misuses drugs and becomes an addict. Because that person today doing it is not as a result of the nuisance. I would — The people you can get them to respond to are the people that were affected, adversely affected by the nuisance. Yes, sir. And that was past conduct, and it's compensation for that past conduct. It's not compensation for that past conduct. It is. I think if you are asking me whether the results of their past conduct no longer exist, I would say no. Of course, no. The results are there. There's damage. And you're going to have them remedy the damage by paying you the money that you're going to outlay to the various treatment facilities and persons. Right? Yes, but I don't believe that's damages because that is the condition they created. Nuisances are defined as acts and conditions. And the condition that they created is the presence of these addicts and the crime and all the related other incidents of the opioid epidemic. We're asking that that be abated by them as a result of their actions in creating it. And that, we believe, is equitable. All right. Do you want to? Is that all we need to hear? Let me ask you something. I'm happy to answer any questions you ask. I know. You're a good lawyer. My question really is, should we proceed somehow to get a clean complaint that we can look at, or should we just accept the dialogue that's gone in the courtroom today with respect to what you're seeking and what's in effect? If the court has doubt as to what we're seeking and wants it in paper, in one document, I'm sure we could do that. But it's not going to look any different than what you've told us today. What you've told us is what you are seeking is abatement. It's what's included in the public nuisance claim that you brought before. If you're asking me is it going to include things like treatment of addicts who become addicted as a result of the defendant's actions, the answer is yes. Is it going to include giving us money for people who have already died? No. The references to deaths are to establish the nuisance. It impacted the public health. Is it going to contain the word compensation like your original complaint did? No. I promise to do a search to remove that word from any amended complaint. And again, that complaint was drafted when there were explicit damage claims. We were seeking compensation. There appeared to be damage claims in that complaint, which we're not seeking. All right. This has been helpful. I guess we have some rebuttals added. Thank you, Your Honor. It's always a pleasure. Yes, sir. Thank you, Your Honor. A couple of quick points. I'll try to be as helpful as I can. At the very beginning of your argument, you said you had three reasons. And I'm certain you didn't get to the third. And I'm not certain if you got to the second. I just want to make sure I know what they are. Okay. I didn't get to either one of them. And they are as follows. The second reason to grant mandamus would be if the Court were not to hold that we're entitled to a jury trial. In this case, you should hold that we are entitled to a jury trial on the undisputedly legal claims in the Attorney General's action. But does that have anything to do with this case? Has this Court ever held that things that weren't consolidated for actual trial are one case for purposes of this rule that you cite in your mandamus petition? This is the rule of Beacon Theaters from the U.S. Supreme Court. I don't think this Court has addressed a question of whether either way. Well, Beacon Theaters was an injunction versus jury trial in the same action. And the notion is that injunctive relief of findings in an actual injunctive relief could not preempt the jury's role in finding the facts. But here we have two separate suits. We're going to have two separate juries and two separate courts. I mean, causes of action. What's the third argument? I'll be happy to say more about that. But the third argument, which is an important one because it is freestanding from the jury trial question, is that the Court should reverse the statewide nature of the trial that the district court has ordered. The district court has ordered a statewide trial when there's no State as a plaintiff or a defendant in this case. And you just – again, this is just a clarification. I want to make sure. You agree the traditional Mandamus test applies to that question? I do agree with that, Your Honor. Yes. That's a lot of different directions to go. Let's go back to the Seventh Amendment. That's where I was headed. That's where I was headed. So I'm – Lockheed – I hope we can settle this. Judge Heitens, you're exactly right. Lockheed Martin, page 353, says, In this circuit, a petition for a writ of Mandamus is the proper way to challenge the denial of a jury trial. And then it cites some cases including Beacon Theaters. And we don't go on to ask the three-factor test? You absolutely don't. So that's – that's the rule of this circuit. And I think it's the right rule. It derives from the Supreme Court in Beacon Theaters. The Supreme Court said a similar thing in Dairy Queen. So I think on the jury trial question, Mandamus is the proper – is the proper question. On the matter of the complaint, I would point, Your Honors – I don't think I have an objection. I don't have an objection to filing a new complaint if that's what you want, but I – Well, go ahead. I'm not sure – I think your colleague has made clear the nature of his claim. I agree. And I think it's even clearer in this order from the district court. I'm looking at, again, Supplemental Appendix 4 and 5. This is the stipulation, and it says that all – I'm going to read a little bit of it. All claims for relief asserted by the plaintiffs are voluntarily dismissed except the stipulating plaintiffs expressly preserve the first claim for relief in their operative complaint. That's public nuisance. There's no disagreement about that. Inclusive of all factual averments incorporated therein – I think that means they're keeping all of the stuff they said about public nuisance in the complaint – which is a claim for common law public nuisance insofar as it seeks an injunction and or the abatement of the alleged public nuisance. Now, my friend is right. There is a parenthetical that says all other requested remedies, including compensatory or punitive damages, are voluntarily dismissed. So that gets us back to the critical question in this case, which is what is abatement for public nuisance? I think that's what's before the Court on anybody's account. It seems to me abatement means to end it. And it seems to me if you create a nuisance by dumping your manure in the neighbor's yard, the abatement is to get it off the yard. So – Now, the question is there'll be results from that. And the results, if it involves monetary compensation, is a different issue. But just abating the nuisance has to focus on the nuisance itself. So I agree with you, Judge Neumeier, but I think we're going to have to take in Bank Huntington or take Huntington to the Supreme Court of West Virginia in order to – No. No. No. No. Because that – You get ammunition. You do not. Because Huntington addresses what the law of abatement is in 2026. To be clear, I was not – His point is simply that what they're calling abatement is not equitable abatement in 1791. I totally agree with that. That's the Seventh Amendment question. I thought Judge Neumeier was saying he doesn't think abatement should include monetary compensation at all, which I agree with under West Virginia law. But that's not – I'm saying word abatement. The word abatement focuses on getting rid of the nuisance. So if somebody creates a nuisance, abatement means get rid of it. Now, if the courts have expanded the word abatement to include damages or compensation, that's another issue, and that is covered by Huntington possibly. But that doesn't necessarily mean that that's a – when you get to the Seventh Amendment question, you're talking more about money damages. Yes. So that – I didn't mean to confuse the Court. You know, the question in this case is when the plaintiff is seeking monetary abatement, which we all think they are. It has to be at least $20, I think. It does have to be at least $20. I don't think they're going to have trouble getting that into their complaints given what they've requested in some of the other cases. The Seventh Amendment question is, given that they are seeking that type of abatement, monetary abatement, payment of money, to use the words Judge Heitens, I think, rightly identified that my colleague was struggling to say, but that are, I think, you know, inevitable in what they're asking for, if that's the claim, and it is the claim, is that legal or equitable under the Seventh Amendment? And the question there is, in 1789, was that a legal or equitable claim? And the answer to that question is that it was a legal claim because it's in – it is the same as or not meaningfully distinct from the payment of monetary damages. What was available in 1789 at most for an injunction, and this goes back to my discussion with Judge Heitens, for public nuisance, excuse me, this goes back to my discussion with Judge Heitens, is an injunction. That was what was available, arguably, although it said rarely, in 1789. What was not available is an order for the defendants to pay the plaintiffs billions of dollars, as they're seeking in the Huntington case on remand. I think the Huntington abatement plan that we cite at page 9 of our supplemental reply brief is helpful. It does not do anything remotely like what Judge Niemeyer is suggesting. It doesn't say the defendants have to go stop making the drugs or producing the – processing the prescriptions for the drugs. It says the defendants have to pay $2.5 billion to the plaintiffs, which they will then use for a series of social service programs that are prescribed in that abatement plan, which we cited in our brief. And that, to be very clear, the question in this case is not whether they can seek that or not. The question is, if they seek that, do they have to do it with the court, or are we allowed to ask for their own residence to sit as the jury in this case, as the Seventh Amendment guarantees? That's the critical question. I think the answer to that is quite straightforward, ultimately, under the Supreme Court's law and under this Court's law in cases like Rose, which talks about the distinction between legal and equitable relief. Now, I don't want to sit down. If you could give me one more minute on the statewide issue. I mean, I do think it's a big problem under cases like Trump v. CASA that the district court is ordering a statewide trial when the plaintiffs in this case do not include the State and the defendants in this case do not include the State. There's no way – Well, you know, that's sort of a collateral issue, because really the reason for the mandamus here is the Seventh Amendment issue. But it seems to me that if the county of X has a cause of action, its remedy can only be the extent to which county X suffered it. And while it will be statewide, because the distribution was all over the State, each county is going to have its own claim, geographical and causative. I agree with – I want to make sure. This was definitely in our mandamus petition. Maybe the Court is saying you were more interested in the Seventh Amendment. I hear what you're saying. It's not obvious that you would have gotten oral argument to raise the Seventh Amendment jury trial issue. Understood. I will just leave by saying, I do think that you're right, Judge Niemeyer, but that is not at all how this case has been structured. If you look at the case management order, which is at 1 and 2 of the addendum, it refers to a single statewide claimant trial. Just tell me why it's not like – I know there are lots of other things we could talk about here, but why is that not – like, if the trial court adheres to this after maybe rereading Trump v. Casa again and it continues to do this, why is that not, like, perfectly remediable on appeal? So I think it is remediable on appeal. Maybe we'll be back here someday without appeal.  Then you just conceded you can't get mandamus. No, I don't think that's right. It says the second – I had a feeling you might say that. The second factor of the mandamus test is there is no adequate means of relief. This Court and the Supreme Court have not construed that to mean no potentially available means of relief. This Court in the Lowe case, for example, that we cite – We're very stingy with mandamus. The fact that we gave it to you so generously is – I don't want to – if you give it to me, I don't want to fight it. But I will say why – just tell me why – and I'll then stop. Why is it, in your view, not adequate? I mean, you will be able to, you know, raise that issue on appeal. And if the Court has done this, we may then have a debate about whether having done so means the whole thing has to be thrown out or not. But, you know, you're an appellate lawyer. Like, that sort of seems like an adequate remedy if they have to do it again. So I'd just point the Court back to N. Ray Lowe. And the Court said – this Court said in that case, in granting mandamus, that the reason the remedy was not adequate was that the defendant would have to sit through a structurally improper trial, a trial in which the Court didn't have jurisdiction. And I will say, maybe to pick up on a point Judge Hytens made earlier, if this Court is going to grant mandamus on the jury trial issue, which I hope you do, I think it would be good to say that the trial should also not be statewide. If you all agree –   Should we should just do one of this, this fun little artist that we sometimes call, like, pendant appellate mandamus jurisdiction, because it just feels like a good idea to weigh in on my views? I mean, I think this mandamus is a discretionary standard. The Court in Lowe used a standard very similar to what I just outlined. I mean, I suppose the Court could say we all agree that a statewide trial is wrong and it violates Article III and it violates Trump v. CASA, but we're just going to let it go forward and we'll appeal someday. The Court could say that, but I'd respectfully submit it would be better for all involved, including both of the parties in the district court, for the Court to say that there needs to be relief limited to the parties. And by the way, this does matter to how the case is presented. If they present evidence of a nuisance statewide, that can't prove a nuisance in each individual community. So this is not some technical or theoretical distinction. It really does go to the core of the structure of this trial, which I do think is the kind of admittedly rare. I don't quite understand what your fear is. I mean, when you try 20 defendants, 20 defendants in a case, it seems to me that the distribution is a statewide issue. It's distributed everywhere, everybody, every county. They could cover that pretty easy with testimony and the fact that it's a nuisance that it caused difficulty in the public community. All that's common stuff. And the damages would be just like any other damages. They're going to have to prove individually. There would not be damages. Well, it depends on the jury trial, but. I agree with you they have to prove them individually, but right now we have an order that says there's going to be a single statewide abatement. Well, but if they don't, I mean, hypothetically, if they don't prove it for each of the counties, like, they're going to get to do it a second time. So the challenge you've got is that seems like a perfectly reasonable way. And each county has a motion to dismiss, you know, that they raised during the course. There was not sufficient evidence with respect to our county, that type of thing. Yeah, I will. I mean, the other point I will make on this point, which we pointed out in our briefs, is, for example, the district court, he really, the district court really is treating this as a statewide trial. And one way you know that is that we have been given a total of 20 depositions in discovery, even though there's 119 plaintiffs. And why is he, is the district judge doing that? Now, that may be an issue in and of itself. I mean. I think it is. I do think it is an issue in and of itself. But I think it's an issue that connects to this statewide trial issue. So I'd urge the Court to take a close look at that as well. Thank you, Your Honor. All right. Well, I don't know if I've heard you out. Did we hear enough from you? Your Honor, I would be happy to answer any. That's okay. I just want. If anybody has any questions. I mean, we're a little loosey-goosey with our time over here. But we're in the afternoon. You know, we had our morning schedule. And so we're. Sounds like everybody got a lot of energy at lunch. Yeah, we're coming to the end of the day. So we'll come down and greet both you and adjourn court for the day. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Paul V. Niemeyer, Julius N. Richardson, Toby J. Heytens